This is Re Lewensztain. Yeah, I think there are none of these in this book. Oh, Jesus. Where did you hide all this stuff? I've got it right here. Okay, our next case is number 19-1014, Andrei Lewenstain, Mr. Rosa. Good morning, Your Honor. Thomas I. Rosa representing. I think maybe if you pick the, get a little closer to the mic. Sure. Is this close enough? Can you hear me clearly? I think that works, yeah. Well, they're going to have a single rebuttal. They can do it however they want. Yeah, I will be arguing the rebuttal as well as the opening arguments. Do a portion of the opening or is it my exclusively, 100% both? I'm sorry, I didn't hear what you said. I'll do both, 100% of the opening and the closing arguments. Okay. Okay, fine. That's fine. And I'll start again. Good morning, Your Honor. My name is Thomas I. Rosa. I am lead counsel for That's It Nutrition, LLC. I have with me my legal associate, Sophie Nameth, who will be assisting me in any documents that you may be making any inquiry of. Okay. Do you have any questions or should I begin my opening statements? No, just go ahead. Okay. Miriam Lowenstein and Lior Lowenstein, the co-inventors, developed a method to make a unique fruit bar that contains nothing else but a combination of two dried raw fruits that yet the bars have a shelf life of over two years and a flavor profile of less than the amount of the apples, which most people would think if you combine apple with another fruit, apple would dominate. And that was a new and unexpected result that they created. Mr. Rosa, page 39 of the blue brief, the appellants cite the Lowenstein Declaration as setting forth experiments of the inventors that provide unexpected results. When I went to the declaration, I really didn't see much about the experiments, any foundation, anything like that. Where in the record is there cognizable evidence of this experimentation? Well, we're going specifically to the Lowenstein Declaration that you cite at paragraph 9. Give me a record cite as to what the... Yes, I will. APPX 0228. It's appendix 0228. But all that says is through further experiments and so on. What gives me actual foundational evidence to describe these experiments? Well, these are individual inventors. It's not a fancy big experimental company. They did it in their shop, in their home. They basically did it through trial and error and basically used different combinations until they came up with something that was a winner. You know, it's easy to have lots of laboratory notes and stuff like that if you're a major company. These are two genuine American entrepreneurs. They did it in their own backyard, their garage, and came up with the unique flavors and unique products that have been very, very, very successful and I might add are the only products on the market that are completely healthy without preservatives, without sugars, and without things that are very unhealthy for children and other people to eat. They came up with something truly unique and it was very successful. Should I continue on? Well, you can continue. I'm not satisfied with that answer, but you can keep going. Okay. We respectfully ask the panel to reverse the Patent Office's rejection of all of the pending claims of invention on being obvious in light of a combination of seven cited references for the following reasons. One, the examiner failed to meet her burden of showing that there was a suggestion, teaching, or motivation for a person of ordinary skill in the art to combine these seven references, but instead read the disclosure of the present invention as a teaching tool to combine those seven references, which is unpermitted hindsight. The claimed result of achieving a dominant flavor profile by adding a lesser amount of second fruit to apples and securing a two-year shelf life without adding anything to the two raw dried fruits or without refrigeration were unexpected. They were reached by the trial and error of the inventors and they were not disclosed in the cited prior art. The appellants believe that the board erred in holding that the fruit bar product that is the result of the product's claim in the application is substantially the same as the cited prior art, and therefore the claimed characteristics of the fruit bar product were inherently present in the Bassett bar discussed in three of the cited references, these being the TIB, the Sunder, and the Kipleo plan. This is simply an early draft. It was not what they came, as most inventors do, and I can tell you I've been a lawyer for 40 years. Most of the time inventors create inventions and improve their own inventions after the fact. That's what happened here. They had an initial draft that you saw in the TIB, but that's not what they finally invented and was set forth in the claims that are in the patent that we're asking you to grant. This is also important. The examiner did not cite any comparable fruit product by a third party or other prior art disclosing a fruit product that contains only raw fruit, nothing else, and has a shelf life of two years. The only other fruit bar that the examiner cited was called the Bear Fruit Bar by Mountain Organics. This was cited in the Webex conference that I had with the examiner after she had issued her first initial rejection. She cited the Bear Mountain argument, Bear Mountain Org, saying in her opinion this new invention made the invention obvious. Well, we submitted a very extensive responsive brief. In summary, the appellant provided evidence showing that this product was made of purees and concentrates, I'm talking about the Bear Mountain, not raw dried fruits, and both the process and the end result product was entirely different than what was disclosed in the subject patent application. There was no comparable third-party product. The examiner could cite to that it basically disclosed the present product, and she, in fact, did withdraw that, and you didn't see that citation ever again in the brief anywhere. In terms of obviousness or the non-obviousness, the Vassett Blog, the Sunder, and the Paleo Plan all discussed previous versions of the Vassett Fruit Bar. They do not discuss key elements of the claimed invention, specifically that pulp is not removed from the raw fruit ingredients, nor do they teach the specifically acclaimed steps of dicing and grinding the raw fruit ingredients or the flavor profile set for the lesser fruit. These are discussed in great detail and in tables in the patent application. Olson, for example, which is a second reference they cited, is completely unrelated biogas technology. That would not be combined with the first three references by one skilled in the art. I believe that's an unreasonable analysis by the patent examiner and the board. We have what's called the WSDA disclosure, disclosure of standard weight content of various fruits, but the fruits are whole fruits, not dried fruits. All the elements include skin, core, seeds, or are included in the weight of one unit of the fruit, plus they also don't give you the size of the fruit in that analysis. I believe the examiner again used this as a draft, but it was simply reading into this far more than it really showed. The eat by date, which showed a two-year shelf life, has the restriction that it's kept in a refrigerator. Our invention doesn't have to be in a refrigerator. It can be in an ordinary supermarket shelf life, not refrigerated. Can I ask you, the primary reference in this case that was relied on by the PTAB is your client's own product, right? The earlier draft of that, yes, correct. The VATSID bar and two others that discussed it, yes. Right. There's a lot of inherency findings in different combinations, maybe inherency findings that the primary reference would meet the claim limitations based on some of the other teachings of the other references. I mean, isn't your client in the best position to have rebut that with actual evidence, for example, that the primary reference, the VATSID bar, doesn't satisfy the claim limitations? I don't see any evidence of that kind in the record. Well, basically, if you look at the claims, and they were very specifically drafted, they focused on the combination of apples and cherries, apples and pears, and apples and apricots. Those were not in the earlier document that you saw. And you say, well, they're only different. We listed a very long list of other fruits that they realized do work. And the answer is they substantially improved the product by showing these different fruits and it made a big difference. And you're saying, well, wouldn't it be the same? No, it's not inherent. Otherwise, number one, we wouldn't have gone through all the struggle of the patent and gone to this level. Also, as I mentioned, there was no discussion of any removal of pulp in the earlier TIB disclosure that you talk about, and that was a key ingredient that we discussed and added to the claims to get them to the point where I felt they all were allowable. Also, there is no discussion of the dicing, and we go into a great detail of the nature of the dicing and the grinding, not only in the independent Claim 1, but, for example, in dependent Claim 8, where we go into a lot of points that are not shown and are not obvious to someone who doesn't really know how to do this. And the key thing, as I mentioned, there isn't a competing product on the market. For all the ones that were cited, all the ones that were shown by the patent office, there isn't a single one that's pure fruit with no additives, no sugars, no preservatives, that has a shelf life that's nutrition and healthy for kids. And all the stuff you see on the market's got preservatives, sugars, and probably a lot of things you can't even pronounce the words of. And so they're very unhealthy. My client came up with a winner, and that's basically a key difference from here versus everything else that's out there in the market. Thank you. Okay, you're in your rebuttal time. Do you want to save it? I would like to save it. Thank you very much. All right. Thank you. Ms. Quillen. Thank you, Your Honors, and may it please the Court. The Board's finding that the claimed fruit bar is obvious over appellant's own prior art, that's it bar, is supported by substantial evidence. And appellants have failed to establish any patentability based on the claimed process limitations or unexpected results because they failed to compare the claims to their own product, which is the prior art, that's it bar. For these reasons, we ask that the Court affirm the Board's decision, and I'm happy to take any questions that the panel may have. Okay, thank you. Thank you. Mr. Rosa, do you have some time if you want to use it? I have a brief rebuttal, yes. On page 20 of the appellee's brief, the Solicitor General would confirm that the PTAB found that the prior art did not explicitly disclose the fruit bar having a flavor of the second fruit. This is on App 001 Appendix 0015. Further, the Solicitor General on page 22 agreed that the combination of TIB, Sunder, and Palaio plan does not explicitly teach that the pectin content of the apples in the that's it bars or that the bars have a shelf life of over two years. The PTAB concluded that these limitations were inherent. We respectfully request that this panel reverse the examiner and PTAB's finding, because findings that the above limitations were inherent is not supported by sufficient evidence. They argue that the prior art had two fruits, at least one being different, and then took the incorrect position that the above unobvious features were inherent without first establishing a prima facie case of obviousness, which requires a finding of motivation to combine the prior art. The doctrine of inheritance should not be applied absent a clearly expressed motivation or reason to combine the three arts that is based on the art themselves. In the appellant's brief on page 17, lines 2 to 3, they state that Lowenstein asserts for the first time that the process limitation, pulp is not removed, imports a compositional difference than that the argument has been waived. I very respectfully disagree with that. The argument has not been waived. In Lowenstein's declaration, which we've already looked at briefly, paragraph 11, inventor Lowenstein declares, quote, it was further discovered through trial and error and experiments by my son, Leo Lowenstein is Mrs. Lowenstein's son, and that I and these new and unexpected results were achieved by not removing the pulp from the raw apples and not removing the pulp from the second raw fruit. On page 33 of lines, it says the appellants in the appellant's brief to the PTAB, in the patent text cited on pages 41 of our appeal brief, beginning on line 16, referring to paragraph 0120 from pages 30 to 31 of the patent text, last three lines of the paragraph 0121 state, the fruit is not put through a processor where all of the pulp extracted as with juicers, which gives a person who consumes the juice a sugar high, see pages 41 of appeal brief. The appeal brief pages 553, lines 13 to 16, show pulp is not removed, is a significant improvement. How is that properly within our reply to what the government said? I'm sorry. I didn't hear your question clearly. I said how is that properly within our reply to the government's very brief argument? Well, basically the government said we didn't raise it in our appeal to the PTAB, and we did raise it to the PTAB, and I pointed that one, it was raised during the prosecution, two, it was raised in the PTAB, and so the government saying, well, you didn't raise it during your argument to the PTAB is simply not a correct statement. I'm talking about oral argument. I'm sorry. It was written in our appeal brief. It wasn't oral. The current oral argument is that the fact that we believe as a significant improvement the pulp not being removed was raised clearly in the patent text where it's cited, clearly in our appeal brief to the PTAB, which they basically ignored and incorrectly said no, and you waived it because you didn't raise it. That's what the solicitor general said, and I respectfully point out that she is not correct. We did raise it in the text and in our appeal brief to the PTAB, as well as addressed it here in our appeal brief here. Okay. I think we're out of time. Thank you, Mr. Rosen. Thank both counsel and cases.